**1290**

Cleveland CHOUEST, Plaintiff,

v.

**A & P BOAT RENTALS, INC.,**
**Defendant.**

Civ. A. No. 69–2368.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Jan. 4, 1971.

amend the judgment in several particulars. These will be considered separately.

## I. EFFECT OF THE STIPULATION

Travelers contends that it is entitled to $4,610.61 as intervenor because of a stipulation entered into by counsel. For purposes of the trial, the plaintiff stipulated that intervenor had paid medical expenses of $1,320.61 and compensation of $3,290 and that "in the event of judgment for plaintiff Travelers Insurance Company is entitled to a judgment over for this amount." The plaintiff now contends that the stipulation as to entry of judgment was made in error. The court is satisfied that it was in fact in error and would relieve the plaintiff of it to prevent serious injustice, Carnegie Steel Co. v. Cambria Iron Co., 1902, 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968; *cf.* Brinson v. Tomlinson, 5 Cir. 1959, 264 F.2d 30, were it not for the fact that the same result is accomplished without the stipulation.

## II. AMOUNT OF JUDGMENT FOR INTERVENOR

■ Before the trial began, Travelers had paid Chouest $1,320.61 for his medical expenses and seventy dollars per week, which is the maximum, for 329 days as compensation. In the tort suit, the court found that the defendant owner of the ship was liable for four months lost wages, for certain medical expenses and for five months pain and suffering. Since Travelers did not pay Chouest pursuant to a compensation award, there is no statutory assignment of the plaintiff's claim against the third party shipowner to the insurance company. However, in keeping with the underlying principle of 33 U.S.C. § 933(e), courts uniformly treat the insurer as subrogated to the employee's claim against the third party and permit it to intervene in his suit. International Terminal Operating Co. v. Waterman SS. Co., 2 Cir. 1959, 272 F.2d 15.

When this is permitted, the employee does not receive double recovery for any

James A. Wysocki, New Orleans, La., for plaintiff.

Maurice C. Hebert, Jr., New Orleans, La., for defendant.

Fred E. Salley, New Orleans, La., for intervenor.

RUBIN, District Judge:

On October 16, 1968, plaintiff, a longshoreman, was injured on the defendant's vessel while in the course of his employment. Travelers Insurance Company, the compensation insurer for Chouest's employer, paid him $4,610.61 for medical expenses and for compensation.

On June 9, 1970 judgment was rendered for Chouest for $6,330.64. Travelers, which had intervened, was awarded $4,610.61 with interest and costs from the date of judicial demand, March 4, 1970. Thereafter plaintiff moved to

item of damage that he suffered. See The Etna, 3 Cir. 1943, 138 F.2d 37; Fontana v. Pennsylvania R. Co., S.D.N.Y.1952, 106 F.Supp. 461, aff'd Fontana v. Grace Line, 2 Cir. 1953, 205 F.2d 151, cert. denied sub nom. Fontana v. Huron Stevedoring Corp., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390. General principles of subrogation would seem to govern the amount of the insurer's recovery.

█ Subrogation is the substitution of another person for a creditor. It assumes the existence of a debt that has been paid by someone other than the primary debtor. The payor then succeeds to the rights of the initial creditor against the debtor. See, generally, 83 C.J.S. Subrogation §§ 1 and 5.

█ In this case A & P is in the position of the debtor, Chouest is the initial creditor, and Travelers is the payor. This court determined that A & P's obligation consisted of liability for four months of lost wages, five months of pain and suffering and medical expenses of $1,455.60. Travelers disposed of only part of this liability and would seem therefore to be subrogated to only part of A & P's obligation. In the first four months of compensation payments, Travelers paid a portion of A & P's liability for four months of lost wages, approximately $1,190.[1] In addition, Travelers paid a portion of A & P's liability for medical expenses, $1,320.61. Its other payments to Chouest notwithstanding, this would appear to be the limit of the intervenor's recovery.[2] Its payment of compensation for the additional seven months, disposed of no debt owed by A & P. Conventional subrogation principles would seem to prevent recovery of the additional $2,100. Chouest therefore seeks to be relieved of his stipulation so as to prevent this recovery.

In Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, however Judge Hutcheson summarily rejected this analysis. In *Haynes*, a longshoreman received $8,150 from the third-party shipowner: $4,400 for lost wages and medical expenses; the balance for pain and suffering. The District Court permitted the compensation insurer to recover all of his compensation payments, $6,892.25, from this fund. Judge Hutcheson rejected the contention that the compensation payments did not lead to subrogation to the amount received for pain and suffering as "so bizarre and unsupportable as to require very little rebuttal." Feeling compelled by the language of section 933(e), Judge Hutcheson determined that the subrogated insurer "shall recover *in full* the payments from the *total* recovery obtained by the injured workingman from a third party defendant, regardless of what that recovery replaces or is termed by the court." It is of course clear that the statutory method of distribution set out in section 933(e) can not entirely govern the results when a suit is brought by the employee. For example, Congress could not reasonably have intended the compensation payer to receive the twenty per cent bonus provided as an incentive for employers permitted to bring the suit against the shipowner after a statutory assignment of the employee's claim. See, Ballwanz v. Jarka Corporation of Baltimore, 4 Cir. 1967, 382 F.2d 433, 436. But Judge Hutcheson's decision that the principles of that section apply with respect to the situation here presented forecloses further consideration of that question.

Whatever this court might have written on a tabula rasa, the Fifth Circuit decision in *Haynes* requires that Travel-

---

1. The figure represents 17 weeks at 70 dollars per week.

2. Thus the court determined that A & P owed Chouest $2,250 for lost wages, or approximately $560 per month for four months. Travelers paid Chouest $70 per week or approximately $300 per month for eleven months. It would seem able to recover only $300 per month for four months as subrogee. The additional money paid out ($300 per month for 7 months) would seem unrecoverable though Chouest would be left with some of the money recovered from A & P ($260 per month for 4 months).

ers be permitted to recover the full extent of its medical and compensation payments, $4,610.61, from the fund owed Chouest by A & P.

## III. ATTORNEY'S FEE

Plaintiff next asserts that his attorney should recover a fee out of the amount awarded the intervenor on the theory that he created a fund out of which the intervenor was paid.

██ This Circuit accepts the general rule that one who creates a fund for another's benefit is entitled to be paid for his services by the party who received the benefit of them. Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Voris v. Gulf-Tide Stevedores, 5 Cir. 1954, 211 F.2d 549, cert. denied 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649; Cannon v. Parker, 5 Cir. 1945, 152 F.2d 706, cert. denied 327 U.S. 806, 66 S.Ct. 965, 90 L.Ed. 1031. In Strachan Shipping Co. v. Melvin, 5 Cir. 1964, 327 F.2d 83, this rule was applied to permit the attorney for a longshoreman to recover his fee from the fund awarded the compensation payer. But in Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, the Court, after discussing the unusual circumstances of the Melvin case refused to expand its rule to a situation similar to the one here. *Haynes*, at 351, held that *Melvin* applied only

> "when the circumstances are such as that parties sought to be held liable for fees can be said to have either expressly or impliedly accepted the attorneyship and its benefits", and "normally a mere incidental advantage resulting to a fund by reason of adverse litigation furnishes no basis for charging the attorney's fees of one of the parties against the fund." Lea v. Paterson Sav. Institution, 142 F.2d 932, 934 (5th Cir. 1944).

When, as in this case, the intervenor employs its own counsel who actively protects its position and asserts its rights throughout the litigation, no part of its recovery is due plaintiff's lawyer.

See, also, Ballwanz v. Jarka Corp. of Baltimore, 4 Cir. 1967, 382 F.2d 433; Riddick v. Rederi A/B Fredrika, E.D. Va. 1967, 271 F.Supp. 360.

Moreover, *Melvin* commanded no automatic payment to longshoremen's counsel from intervenors' recoveries. Only a proper consideration by the District Court of the equitable principles involved was required. These principles provide no basis for counsel's recovery in this case. See Haynes v. Rederi A/S Aladdin, *supra*.

## IV. INTEREST

Finally, plaintiff challenges the award of interest to the intervenor from the date of judicial demand. He contends that, since the action arises under the Longshoreman's and Harbor Workers' Compensation Act, the date for commencement of legal interest is governed by 28 U.S.C. § 1961 which specifies that interest is to run from "the date of the entry of judgment."

██ The trial of this case proceeded under the general principles of the maritime law. It is proper that the same body of law determine the propriety of awarding pre-judgment interest. In the maritime law, the awarding of pre-judgment interest for personal injuries rests within the sound discretion of the trial court. Canova v. Travelers Ins. Co., 5 Cir. 1969, 406 F.2d 410; Haynes v. Rederi A/S Aladdin, *supra*; National Marine Service, Inc. v. Talley, 5 Cir. 1965, 348 F.2d 589; Gardner v. National Bulk Carriers, 4 Cir. 1964, 333 F.2d 676; Petition of City of New York, 2 Cir. 1964, 332 F.2d 1006. The plaintiff's loss was suffered at the date of his injury, a time long prior to the determination of the dollar amount of the loss.

> "[W]hen a court fixes damages to compensate for a loss which occurred in the past, there should be some allowance for the period between the date of the loss and the date of judgment. Recompense may thus be given for the further loss in the postpone-

ment of the receipt of compensation. In all too many instances the delay in reaching cases for trial brings suffering and privation to those who were dependent on the deceased. Even the more fortunate of the bereaved may have been forced to borrow money at interest to meet their expenses. * * * [T]he defendants who are ultimately directed to pay have had the use of the money declared to be due." Petition of the City of New York, *supra*, at 1008.

Thus the plaintiff is to be awarded interest from the date of his injury. To prevent the unjust enrichment of the plaintiff, the intervenor will be awarded interest on amounts paid by it from the date each payment was made. The change in the date from which interest will run for the plaintiff and the intervenor will be the only amendment to the judgment. In all other respects the plaintiff's motion is denied.