456 F.2d 956
 NACIREMA OPERATING COMPANY, Inc., and Liberty Mutual
Insurance Company, Appellees,
v.
Jerry C. OOSTING, Deputy Commissioner, Bureau of Employees'
Compensation, Department of Labor, Appellant.
 No. 71-1639.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 6, 1972.
Decided March 16, 1972.
 
 Leavenworth Colby, Sp. Asst. Atty. Gen. (L. Patrick Gray, III, Asst. Atty. Gen., and Alan S. Rosenthal, Atty., Dept. of Justice, on brief), for appellant.
 Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith, & Martin, Norfolk, Va., on brief), for appellees.
 Before CRAVEN and BUTZNER, Circuit Judges, and YOUNG, District Judge.
 BUTZNER, Circuit Judge:
 
 
 1
 The deputy commissioner appeals from an order of the district court which reduced a longshoreman's deficiency award by the amount of the fee he paid an attorney to represent him in an action against the ship on which he was injured. Nacirema Operating Co., Inc. v. Oosting, 330 F.Supp. 1034 (E.D.Va.1971). We reverse because the decision is inconsistent with the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901 et seq. (1970), as amplified by its legislative history, and because it is contrary to the decisions of other courts and deputy commissioners.
 
 
 2
 Robert M. Allmond, a longshoreman employed by Nacirema Operating Co., Inc., was severely and permanently injured while working on board a vessel at Norfolk, Virginia. In accordance with the Act, his employer promptly began payment of compensation and medical expenses resulting from the injuries.[1] These payments continued until Allmond settled an action he had instituted against the shipowner, as permitted by Sec. 33(a) of the Act. From this settlement, Allmond reimbursed Nacirema for the compensation payments he had received and the medical expenses it had paid on his behalf. He also paid his attorney $37,000 for fee and expenses, leaving a net recovery of approximately $65,000. Because the amount of the settlement of Allmond's case against the shipowner was less than the present value of his compensation entitlement, he sought deficiency compensation under Sec. 33(f).[2]
 
 
 3
 At the hearing before the deputy commissioner, the parties agreed that the amount Allmond paid to discharge Nacirema's lien for past benefits should be deducted from the sum he received on account of his injuries in computing the company's credit against future compensation.[3] Therefore, the only issue is whether the phrase in Sec. 33(f), "the amount recovered," means Allmond's gross recovery less reimbursement for benefits paid, or whether it should be construed as the net proceeds actually received by him after also deducting his reasonable attorney's fee and expenses. Nacirema presented evidence that it had been impleaded as a third party defendant by the shipowner, it had employed its own counsel, and it had contributed to the settlement as indemnitor of the ship. It contended that since its position in the suit was adverse to Allmond's, it should not be burdened with his attorney's fee and expenses. It, therefore, claimed as a credit Allmond's recovery from his action against the ship, without deduction of the sum he paid his attorney. Computed in this fashion, Nacirema's credit against future compensation would approximate $102,000. Allmond asserted that only his net proceeds, after deducting the $37,000 he paid his lawyer, was available as a credit. By his computation the credit would be roughly $65,000.
 
 
 4
 The deputy commissioner agreed with Allmond and credited Nacirema with only the net proceeds.[4] The practical effect of the ruling is that Nacirema must resume compensation payments to Allmond after about 17 years. Under Nacirema's computation it would have been relieved of payments until the expiration of roughly 27 years. Should Allmond expend the net proceeds he received in his action against the ship at the rate of his weekly compensation entitlement, he will exhaust the sum he received in about 17 years, and under Nacirema's theory he would be without the benefit of either his settlement or compensation for 10 years.[5]
 
 
 5
 Nacirema appealed to the district court which accepted the deputy commissioner's findings of fact, but differed in its interpretation of the Act. The court held that "[t]he statute refers to the amount recovered against [the shipowner], not the sum ultimately received by the employee." 330 F.Supp. at 1035. Accordingly, it modified the deputy commissioner's deficiency award by allowing Nacirema the full amount of the settlement, without deduction for attorney's fee and legal expenses, as a credit toward future payments.
 
 
 6
 The Longshoremen's Act affords a worker the right to sue the person responsible for his injury if the wrongdoer is neither his employer nor a fellow employee. Since its enactment, the statute has been interpreted to provide that the "employer . . . remains liable for any amount by which the recovery against the [wrongdoer] falls short of the prescribed compensation." Chapman v. Hoage, 296 U.S. 526, 528, 56 S.Ct. 333, 334, 80 L.Ed. 370 (1936). Before 1959, acceptance of an award of statutory compensation operated as an assignment to the employer of the cause of action against the person liable for the injury. Amendments to the Act in 1959 allowed a worker to sue after accepting a compensation award, provided he does so within six months.[6] The amendments, however, were not intended to change the basic concept of the Act, which secures at least the full amount of statutory compensation for the injured worker. The legislative history emphasizes that when a longshoreman sues a wrongdoer, the employer is to be benefited only out of the net proceeds of the recovery.[7]
 
 
 7
 Section 33(e) provides that when an employer sues the person responsible for injury to the employee, the employer's legal expenses and attorney's fee shall be deducted before any part of the recovery is paid to the employee. The Act, however, contains no mention of attorney's fee and legal expenses when an employee brings the suit. To fill this void, deputy commissioners and courts, both before and after the 1959 amendments, uniformly have held that an employee's reasonable attorney's fee and expenses must be deducted from the amount recovered in an action at law to determine his deficiency award.[8] These decisions effectively implement the congressional policy of assuring an injured worker at least the statutory compensation to which he would have been entitled had he not brought suit.
 
 
 8
 Neither the Act nor the decisions interpreting it create an exception for the stevedore which finds itself adverse to its longshoreman because the shipowner has joined it as a third party defendant. The shipowner's right to indemnification from the stevedore, sanctioned in 1956,[9] is of course well known to Congress and the Bureau of Employees' Compensation. Under settled principles of law, we cannot lightly put aside the agency's consistent interpretation of the Act by making an exception which neither Congress nor the Bureau recognizes. NLRB v. United Insurance Co., 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 9
 Nacirema relies on Ballwanz v. Jarka Corp., 382 F.2d 433 (4th Cir. 1967), but that case is inapplicable. There we held that when the amount recovered in an action against the shipowner is distributed, the stevedore is entitled to reimbursement of its equitable lien for medical expenses and compensation already paid without deduction of any part of the longshoreman's attorney's fee. Judge Brown has lucidly explained the difference between the allocation of an attorney's fee in distribution cases, such as Ballwanz, and the computation of the employer's credit in deficiency cases, such as this. Strachan Shipping Co. v. Melvin, 327 F.2d 83, 86 (5th Cir. 1964) (dissenting opinion). The basic difference is that the Ballwanz rule for distributing a recovery does not deprive a longshoreman of compensation due him under the Act as would acceptance of Nacirema's attempt to apply this rule in the computation of a deficiency award. Indeed, Allmond faithfully followed the rule when he fully reimbursed Nacirema for its outlay of medical expenses and compensation. Ballwanz is in harmony with every case, save one, which has directed the distribution of recoveries,[10] and nothing in this opinion trenches on its authority.
 
 
 10
 The judgment is reversed and the case is remanded for reinstatement of the deputy commissioner's award.
 
 
 
 [1]
 33 U.S.C. Secs. 907, 914
 
 
 [2]
 Section 33(f) of the Act, 33 U.S.C. Sec. 933 (f), provides:
 "If the person entitled to compensation institutes proceedings within [six months after an award] the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person."
 
 
 [3]
 Section 33(e) of the Act, which governs the distribution of the recovery against a wrongdoer when the employer institutes the action, specifically provides for reimbursement to the employer of all compensation and medical payments that he has advanced. There is no counterpart of this statutory lien in Sec. 33(f) which deals with an employee's suit against a wrongdoer. To forestall double recovery by the employee, an equitable lien patterned after the Sec. 33(e) lien has been judicially imposed on recoveries in suits brought by employees. See e. g., Fontana v. Pennsylvania R. R., 106 F.Supp. 461, 462 (S.D.N.Y.1952), aff'd sub nom. Fontana v. Grace Line, Inc., 205 F.2d 151 (2d Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 398 (1953)
 
 
 [4]
 The deputy commissioner stated:
 ". . . That as a result of the compromise settlement effected between the claimant and the third party or parties said to have been responsible for his injury, the claimant has realized the sum of $110,000.00, in addition to the sum of $2,170.00 in compensation paid on account of temporary total disability by the employer and insurance carrier for a gross recovery of $112,170.00; that the attorney's fee of $36,487.33, legal expenses of $538.02, the insurance carrier's lien for compensation in the amount of $2,170.00 and medical expenses in the amount of $8,123.55 which were incidental to the third-party settlement amount to $47,318.90; that the claimant has netted the amount of $64,851.10 ($112,170.00 less $47,318.90) which sum is a prepayment of compensation accruing the claimant under this award."
 
 
 [5]
 Of course, under either the deputy commissioner's award or Nacirema's theory of computation, Nacirema's obligation for future compensation will end if Allmond were to die within 17 years. Moreover, this time is subject to adjustment if Allmond's injuries require additional medical treatment, or in the unlikely event that he should be restored to health
 
 
 [6]
 Act of Aug. 18, 1959, Pub.L. No. 86-171, 73 Stat. 391, amending and codified at 33 U.S.C. Sec. 933
 
 
 [7]
 S.Rep. No. 428, 86th Cong., 1st Sess. 2 (1959), reprinted in 1959 U.S.Code Cong. & Ad.News 2135, states in part:
 "Although an employee could receive compensation under the act and for the same injury recover damages in a third-party suit, he would not be entitled to double compensation. The bill, as amended, provides that an employer must be reimbursed for any compensation paid to the employee out of the net proceeds of the recovery. . . ."
 
 
 [8]
 Stark v. Shell Oil Co., 450 F.2d 994 (5th Cir. 1971); Voris v. Gulf Tide Stevedores, Inc., 211 F.2d 549 (5th Cir.), cert. denied, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649 (1954); Independent Stevedore Co. v. Stocker, 292 F.Supp. 354 (D.Or.1968); Seaboard Marine Service Corp. v. Quigley, 159 F.Supp. 27 (S.D.N.Y. 1958), aff'd 266 F.2d 822 (2d Cir.), cert. denied, Peterson v. Seaboard Marine Service Corp., 361 U.S. 830, 80 S.Ct. 82, 4 L.Ed.2d 73 (1959); see, also, Strachan Shipping Co. v. Melvin, 327 F.2d 83, 86 (5th Cir. 1964) (Brown, J., dissenting)
 
 
 [9]
 Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956)
 
 
 [10]
 E. g., Haynes v. Rederi A/S Aladdin, 362 F.2d 345 (5th Cir. 1966), cert. denied, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967); Davis v. United States Lines Co., 253 F.2d 262 (3d Cir. 1958); Petition of Sheffield Tankers Corp., 222 F.Supp. 441 (N.D.Cal.1963); Fontana v. Pennsylvania R. R., 106 F.Supp. 461 (S.D.N.Y.1952), aff'd sub nom. Fontana v. Grace Line, Inc., 205 F.2d 151 (2d Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953); contra, Strachan Shipping Co. v. Melvin, 327 F.2d 83 (5th Cir. 1964)